**COUNTRYMARK COOPERATIVE, INC. and Countrymark Cooperative, LLP, Appellants–Defendants,**

v.

**Joseph HAMMES, Trustee of Stephen Turner, Appellee–Plaintiff.**

No. 29A02–0712–CV–1142.

Court of Appeals of Indiana.

Aug. 29, 2008.

Calvert S. Miller, Michael A. Barranda, Miller Murphy, Fort Wayne, IN, Attorneys for Appellants.

Thomas E. Hastings, Sam D. Krahulik, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Countrymark Cooperative, Inc., ("Countrymark, Inc.") and Countrymark Cooperative, LLP, ("Countrymark, LLP") (collectively, "Countrymark") appeal a judgment in favor of Joseph Hammes, Trustee of Stephen Turner, ("Turner"). Countrymark raises three issues, which we revise and restate as:

I.     Whether the trial court erred by denying Countrymark's motion for summary judgment;

II.    Whether the trial court erred by granting Turner's motion to amend his complaint to conform to the evidence; and

III.   Whether the trial court erred by denying Countrymark's motion for judgment on the evidence pursuant to Ind. Trial Rule 50.

We affirm.

The relevant facts follow. Turner was employed as a truck driver for B & R Oil and hauled gasoline to gas stations. He frequently visited Countrymark's Jolietville terminal to pick up gasoline. On February 15, 2004, Turner went to the Jolietville terminal to pick up gasoline. As Turner was pulling into the Jolietville terminal, he noticed two people backing a fishing boat into the pipeline maintenance building, which is located approximately 100 yards from the gas racks. As Turner was placing fuel in the tanker, the meter on the gas racks malfunctioned, and Turner could not complete the loading of his fuel. Turner was unable to locate a terminal employee despite repeated attempts. In an effort to obtain help, Turner decided to walk to the pipeline maintenance building. As Turner approached the building,

he noticed that there was ice on the pavement in front of both doors. Turner attempted to walk across the ice, but he fell and sustained injuries.

Turner filed a complaint against Countrymark, Inc., for his personal injuries. The complaint alleged that Countrymark, Inc., was doing business at 17710 Mule Barn Road, Westfield, Indiana. Countrymark, LLP, filed an answer to the complaint and admitted that Countrymark, LLP, did business at the property in question. Turner later filed a motion for leave to amend his complaint to substitute Hammes, trustee of Turner's bankruptcy proceeding, as the plaintiff in the case, which the trial court granted. Countrymark, LLP, again filed an answer to the complaint and admitted that it did business at the property in question.

Countrymark, Inc., then filed a motion for summary judgment, arguing that it did not owe a duty to Turner because Turner was not "trained or authorized to approach the pipeline maintenance building...." Appellant's Appendix at 26. Further, Countrymark, Inc., argued that, even if it owed a duty to Turner as an invitee, Countrymark could not be liable because the danger was obvious. After striking Turner's response to the motion for summary judgment, the trial court denied Countrymark's motion for summary judgment. Specifically, the trial court found:

\* \* \* \* \*

4.   That the Court has reviewed the Terminal Loading Rules and Instructions between the Plaintiff and the Defendant. The Court finds that the Plaintiff was under an affirmative duty under Section 3.1 to "report any mechanical problems ... to terminal personnel." The Plaintiff was attempting to fulfill this affirmative duty when the accident occurred. The Plaintiff had attempted several options to report

the problem and obtain help at the racks including setting off the alarms before he proceeded to the location of the accident. Therefore, since the Plaintiff was attempting to fulfill his duty and obtain help, the Plaintiff is to be considered a business invitee at the location of the incident.

5. That although Plaintiff was considered a business invitee[,] the Court of Appeals in *Tate v. Cambridge Commons Apts.*, 712 N.E.2d 525 (Ind.Ct.App.1999), held that a business is not liable to his invitee for physical harm caused to them by an activity or condition on the land, which danger is obvious to the invitee, unless the landowner should anticipate the harm. The court went on to state that without a strong compelling reason requiring the Plaintiff to walk across the dangerous condition there would be no liability. In *Tate* the Court found that there was no evidence presented that there was not another route that could have been taken to avoid the dangerous conditions.

6. That the evidence that has been submitted in this case shows that it is a jury question if there was a strong compelling reason for the Plaintiff to walk across the ice to notify terminal personnel of the problem he was experiencing with the terminal. In addition, the Defendant has submitted portions of the deposition of the Plaintiff in which the jury could find that this was the only route that the Plaintiff could take to obtain entry into the building.

\* \* \* \* \*

Appellant's Appendix at 80.

A jury trial was held in October 2007. After Turner rested his case, Countrymark requested judgment on the evidence pursuant to Ind. Trial Rule 50. Countrymark argued that Countrymark, Inc., was not the owner of the property in question at the time of the accident and that the property was owned by Countrymark, LLP, at all relevant times. Turner moved to amend the pleadings to conform to the evidence. The trial court took the matter under advisement until the completion of the case. Countrymark then rested its case. After deliberations, the jury assessed 15% of the fault to Turner and 85% of the fault to Countrymark. The jury further found that Turner had sustained damages of $485,000.00.

The trial court requested briefing on Countrymark's motion for judgment on the evidence and Turner's motion to amend the pleadings to conform to the evidence. After the parties filed briefs on the issues, the trial court denied Countrymark's motion for judgment on the evidence and granted Turner's motion to amend to add Countrymark, LLP, as a named defendant. The trial court then entered judgment against Countrymark, Inc., and Countrymark, LLP, in the amount of $412,250.00.

## I.

The first issue is whether the trial court erred by denying Countrymark's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant.

*Mangold,* 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Turner's action against Countrymark is a negligence claim. A plaintiff must establish three elements in order to recover on a negligence theory: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind.2004). A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Reed v. Beachy Const. Corp.,* 781 N.E.2d 1145, 1148 (Ind.Ct.App.2002), *trans. denied.*

Countrymark does not dispute that it owed a duty to Turner as a business invitee. However, Countrymark argues that Turner failed to demonstrate a genuine issue of material fact as to whether Countrymark breached its duty to Turner and that Countrymark was entitled to summary judgment as a matter of law.

■ "The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue of law within the province of the court." *Douglass v. Irvin,* 549 N.E.2d 368, 369 (Ind.1990). "If a duty of care exists, the determination of whether a breach of duty occurred is a factual question requiring an evaluation of the landowner's conduct with respect to the requisite standard of care." *Id.* at 370. As a result, summary judgment is "rarely appropriate" in negligence cases. *Rhodes,* 805 N.E.2d at 387. "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

■ The Indiana Supreme Court has held that a property owner must maintain its property in a reasonably safe condition for business invitees. *Douglass,* 549 N.E.2d at 369. Indiana has adopted the Restatement (Second) of Torts's formulation of landowners' liability to business invitees. *Id.* at 370. As the Restatement (Second) of Torts explains:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343. Further, section 343A(1) of the Restatement (Second) of Torts, which is meant to be read in conjunction with section 343, provides: "A possessor of land is not liable to his invitees for physical harm caused to

them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

The Indiana Supreme Court's most recent discussion of business invitees occurred in *Smith v. Baxter*, 796 N.E.2d 242 (Ind.2003). There, the defendants owned a farm with several grain bins. 796 N.E.2d at 245. Ladders on the grain bins had rungs that were not as wide or as far away from the side of the grain bin as recommended and the rungs were not covered with nonslip material. *Id.* The son-in-law of one of the defendants regularly helped on the farm. *Id.* at 246. While the son-in-law was helping the defendants one morning, the ladder rungs were covered with dew and the son-in-law fell from the ladder. *Id.* At the trial, the trial court denied the defendants' motion for judgment on the evidence, and the jury awarded the son-in-law damages. *Id.* at 243.

On appeal, the defendants argued that the trial court should have granted their motion for judgment on the evidence because there was no evidence that they breached their duty to the son-in-law. *Id.* Specifically, they claimed that, because the son-in-law's knowledge of any safety deficiencies in the ladder from which he fell was equal to or greater than that of the defendants, the defendants did not breach their duty of reasonable care to the son-in-law. *Id.*

After reiterating that the Restatement (Second) of Torts §§ 343 and 343A were the relevant standards, the Indiana Supreme Court considered whether an invitee's knowledge of the risk was an appropriate factor in determining breach of duty. *Id.* at 243–244. Quoting *Douglass*, 549 N.E.2d at 370, the Court noted:

> For purposes of analysis of breach of duty, a landowner's knowledge is evaluated by an objective standard. This is in contrast to the determination of the defense of incurred risk, wherein the invitee's mental state of venturousness (knowledge, appreciation, and voluntary acceptance of the risk) demands a subjective analysis of actual knowledge. *Thus, factual circumstances may exist in which a court may find that a landowner's failure to take precautions or to warn may constitute a breach of duty because it was reasonably foreseeable that the invitee could suffer harm despite knowledge or obviousness of the risk, and at the same time find that an invitee had actual knowledge and appreciation of the specific risks involved and voluntarily accepted that risk, thus establishing the defense of incurred risk.*

*Id.* at 244. The Court concluded that "[t]he comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts." *Id.* at 245. Further, the Court held that there is no requirement that the invitee's conduct be undertaken for a "strong, external compelling circumstance." *Id.* (rejecting the requirement found in *Tate v. Cambridge Commons Apartments*, 712 N.E.2d 525 (Ind.Ct.App.1999), *trans. denied,* and *Ooms v. U.S.X. Corp.*, 661 N.E.2d 1250 (Ind.Ct.App.1996), *trans. denied,* that the invitee's conduct be undertaken for strong, external compelling circumstances to render the acceptance of the risk involuntary).[1]

1. Countrymark relies upon *Tate* and *Ooms* for the proposition that Turner's conduct in walk- ing across the ice was not undertaken due to strong, external compelling circumstances.

Applying this standard to the defendants' motion for judgment on the evidence, the Court concluded:

The evidence thus shows that the defendants were aware of risks presented by the ladder, having not only constructed it on their property, but also having used it regularly since its construction. They recognized that the ladder was dangerous, and that it was particularly dangerous on the day of the incident. It is also reasonable to infer that the defendants were aware that [the son-in-law] would climb the ladder at their request despite its obvious hazards. Substantial evidence exists that the defendants knew or should have known that climbing the bin ladder at the time of the incident involved an unreasonable risk of harm.

It is a much closer question as to whether there was substantial evidence that (1) the defendants should have expected that the [the son-in-law] would not discover or realize the danger, or fail to protect himself against it, and (2) the defendants should have anticipated the harm despite the [son-in-law's] knowledge or the obvious nature of the risk. Because we must look only to the evidence and the reasonable inferences most favorable to the plaintiff as a non-moving party, and because the motion for judgment on the evidence is proper only where there is no substantial evidence supporting an essential issue in the case, we decline to reverse the trial court. The interpretation of the evidence, with the necessary assessments of weight and credibility, was properly left to the sound judgment of the jury. *Id.* at 246.

■ Here, the designated evidence demonstrated that Turner had been working for B & R Oil as a truck driver for approximately six weeks.[2] Turner hauled gasoline, and he frequently visited Countrymark's Jolietville terminal to pick up gasoline. Turner had reviewed and signed the Jolietville terminal's loading rules and instructions, which included instructions to "[r]eport any mechanical problems, spills or ticket problems to terminal personnel." Appellant's Appendix at 54.

On February 15, 2004, Turner went to the Jolietville terminal's office to pick up gasoline. While pulling onto the property, he noticed two people backing a fishing boat into the pipeline maintenance building, which is located approximately 100 yards from the gas racks. He went into

---

Given the Indiana Supreme Court's pronouncement in *Baxter*, we conclude that there is no requirement that Turner's conduct had to be undertaken for such compelling circumstances.

2. The parties dispute whether Countrymark designated Turner's entire deposition in support of its motion for summary judgment. Countrymark's designation of evidence identified the following: "1. Deposition of Stephen Turner on June 5, 2006 (Excerpts attached hereto, and specifically cited in Defendant's memorandum)." Appellant's Appendix at 33. In the memorandum, Countrymark cited to specific pages of the deposition. In *Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind.2008), *reh'g denied*, the Indiana Supreme Court held that courts and opposing parties should not be required to flip from one document to another to identify which evidence is designated by the summary judgment movant. "Rather, the entire designation must be in a single place, whether as a separate document or appendix or as a part of a motion or other filing." *Id.* In *Filip*, the Court held that, where the movant had designated pages of a deposition and later in a different filing designated specific lines and paragraphs, the non-movant could rely upon the entire designated pages of the deposition in responding to the motion for summary judgment. *Id.* Similarly, here, because Countrymark designated the entire deposition and later in a different filing identified specific pages, Turner can rely upon the entire deposition.

the terminal office to complete his paperwork and did not see any terminal personnel in the office. He then pulled his truck to the gas rack to place fuel in the tanker. However, the meter on the gas racks malfunctioned, and Turner could not complete the loading of his fuel. Turner walked to the office, yelled for assistance, and could not find any terminal employees. Turner returned to the gas racks and attempted unsuccessfully to manually complete the loading of his fuel. Turner returned to the office and was again unable to locate a terminal employee. After returning to his vehicle, Turner sounded his air horn a couple of times without any response. Turner then sounded the gas racks alarms for three or four minutes but received no response.

In an effort to obtain help, Turner decided to walk to the pipeline maintenance building, where he had previously seen two people. As Turner approached the building, he noticed that there was ice across the pavement in the front of the building. Turner could not get to either door to the building without stepping on the ice. Although Turner tried to walk carefully across the ice, he fell and sustained injuries.

■ The trial court found that this evidence "shows that it is a jury question if there was a strong compelling reason for the Plaintiff to walk across the ice to notify terminal personnel of the problem he was experiencing with the terminal." Appellant's Appendix at 80. Under *Baxter*, it is unnecessary that Turner have a "strong compelling reason" to walk across the ice. 796 N.E.2d at 245. Rather, the appropriate standard under section 343 of the Restatement (Second) of Torts is: (a) whether Countrymark knew or by the exercise of reasonable care would have discovered the dangerous condition and should have realized that it involved an unreasonable

risk of harm to invitees, (b) whether Countrymark should have expected that an invitee would fail to protect himself from the danger, and (c) whether Countrymark failed to exercise reasonable care to protect the invitee. *See id.* at 244–246. Turner admitted that he was aware of the ice and recognized the danger. Thus, in addition to the aforementioned elements under section 343, under section 343A of the Restatement (Second) of Torts, Countrymark is not liable unless they should have anticipated the harm despite an invitee's knowledge of the danger or the obviousness of the danger. *See id.*

■ As with a motion for judgment on the evidence, in considering a motion for summary judgment, we resolve all inferences in favor of the nonmoving party. *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1289 (Ind.2006). Turner had a duty under Countrymark's rules to report malfunctions to a Countrymark employee. Although Turner repeatedly attempted by various means to find a Countrymark employee, Countrymark had left the gas racks unattended. While searching for a Countrymark employee, Turner fell on ice in front of the maintenance building. Under these circumstances, we conclude that genuine issues of material fact exist as to whether Countrymark, by the exercise of reasonable care, would have discovered the dangerous condition and should have realized that it involved an unreasonable risk of harm to Turner, whether Countrymark should have expected that Turner would fail to protect himself from the danger, and whether Countrymark failed to exercise reasonable care to protect Turner. Further, given Countrymark's failure to staff the gas racks, genuine issues exist as to whether Countrymark should have anticipated the harm despite Turner's knowledge of the danger or the obvious-

ness of the danger. *See, e.g., Baxter*, 796 N.E.2d at 246. As in *Baxter*, "[t]he interpretation of the evidence, with the necessary assessments of weight and credibility, was properly left to the sound judgment of the jury." *Id.* Consequently, the trial court did not err by denying Countrymark's motion for summary judgment.

## II.

■ The next issue is whether the trial court erred by granting Turner's motion to amend his complaint to conform to the evidence. Countrymark argues that the trial court erred by granting Turner's motion to amend his complaint to conform to the evidence presented at trial that the property in question was owned by Countrymark, LLP, rather than Countrymark, Inc., which was the named defendant.

■ The amendment of pleadings to conform to the evidence presented at trial is a matter within the trial court's discretion, and we will not reverse the trial court's decision barring an abuse of that discretion. *Wachstetter v. County Properties, LLC*, 832 N.E.2d 574, 578 (Ind.Ct. App.2005), *reh'g denied, trans. denied.* Ind. Trial Rule 15(B) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

In addition, Ind. Trial Rule 15(C) allows an amended pleading, under certain circumstances, to relate back "to the date of the original pleading." Specifically, Ind. Trial Rule 15(C) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

■ "The net result is that in order for an amendment of a complaint to relate back under Trial Rule 15(C), no later than 120 days after the complaint is filed a defendant must receive notice of the pendency of the action and be aware that, but for a mistake, that defendant would have been named in the original complaint." *Porter County Sheriff Dep't v. Guzorek*, 857 N.E.2d 363, 368 (Ind.2006), *reh'g de-*

*nied.* "This doctrine of relation back under current Indiana Trial Rule 15(C) seeks to strike the proper balance between the basic goal of the Trial Rules to promote decisions on the merits and the policies underlying statutes of limitations, the most significant of which are to provide fairness and finality to defendants." *Id.* "The rule therefore liberally allows amendments of pleadings but also seeks to ensure that defendants 'receive notice of claims within a reasonable time, and thus are not impaired in their defense by evidence that is lost or diminished in its clarity because of the undue passage of time.'" *Id.* (quoting *Olech v. Vill. of Willowbrook,* 138 F.Supp.2d 1036, 1041 (N.D.Ill.2000)).

Here, after the trial, the trial court granted Turner's motion to amend his complaint to conform to the evidence that Countrymark, LLP, owned the property in question rather than Countrymark, Inc., the defendant named in Turner's complaint. On appeal, Countrymark argues that Trial Rule 15(B) does not allow a plaintiff to amend his complaint to add a new defendant after the return of a jury's verdict. Countrymark's sole argument is that, under Ind. Trial Rule 15(B), Turner was required to provide formal service of process to Countrymark, LLP, and was required to add Countrymark, LLP, as a defendant prior to trial.

We first note that Ind. Trial Rule 15(B) provides that a motion to amend to conform to the evidence "may be made upon motion of any party at any time, even after judgment." Moreover, we have previously allowed the addition of a new defendant under similar circumstances. In *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer,* 500 N.E.2d 1257, 1259–1260 (Ind.Ct.App.1986), *reh'g denied,* a homeowner sued an inspection company, and the trial court found that the inspection company had breached its contract with the homeowner. The trial court also found that the company was a "sham corporation" and a "mere alter ego" of the company's owner, George Cline. *Id.* at 1260. Thus, the trial court found Cline personally liable. *Id.* On appeal, Cline argued that the trial court erred by finding him personally liable because he was never served with process or named as a defendant distinct from the company. *Id.* We noted that Cline had accepted service of the complaint, was present throughout the trial, and was aware of the suit and the issues raised. *Id.* Further, the veil piercing issue was raised at trial without objection and was tried by implied consent. *Id.* Consequently, we held that Cline was properly added as a defendant under Ind. Trial Rule 15(B). *Id.* at 1260–1261.

Here, Turner's complaint was filed against Countrymark, Inc. Before trial, Countrymark's pleadings alternated between using Countrymark, Inc., and Countrymark, LLP, to describe itself. In discovery, Countrymark informed Turner that the property was owned by Countrymark, LLP. However, in discovery, Countrymark also provided Turner with an insurance policy issued to Countrymark, Inc., which was effective at the time of Turner's fall. At trial, Countrymark's terminal operator testified that he was employed by Countrymark, LLP, and that Countrymark, LLP, not Countrymark, Inc., owned the property in question. Mary Leek, "a corporate officer of Countrymark, LLP" was seated at the defense table during the trial. Transcript at 16–17.

We conclude that the issue of the property's ownership was raised at the trial by Countrymark and was tried by implied consent. Countrymark, LLP, presented no argument that it was prejudiced in maintaining a defense upon the merits, and the trial court's amendment to conform to

the evidence subserves the presentation of the merits of the action. Consequently, we conclude that the trial court did not abuse its discretion by amending the pleadings to conform to the evidence that Countrymark, LLP, rather than Countrymark, Inc. owned the property in question. *See, e.g., A.B.C. Home & Real Estate Inspection*, 500 N.E.2d at 1260–1261 (holding that the trial court properly added a party defendant to conform to the evidence presented at the trial).

Moreover, we note that Countrymark, LLP, does not dispute that it had notice of the action and does not contend that it was prejudiced by the delay in adding it as a party. It appears that Countrymark, LLP, was aware that Turner had made a mistake concerning the identity of the proper defendant. Thus, under Ind. Trial Rule 15(C), an amendment changing the party defendant would relate back to the date of the original pleading.

## III.

■ The next issue is whether the trial court erred by denying Countrymark's motion for judgment on the evidence pursuant to Ind. Trial Rule 50. Ind. Trial Rule 50 states that a motion for judgment on the evidence should be granted, "where all or some of the issues in a case tried before a jury … are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it." Ind. Trial Rule 50(A). The Indiana Supreme Court has held that "[a] motion for judgment on the evidence should be granted 'only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim.'" *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind.2008) (quoting *Dahlin v. Amoco Oil Corp.*, 567 N.E.2d 806,

810 (Ind.Ct.App.1991), *trans. denied*). Upon appellate review of a trial court's ruling on such a motion, the reviewing court "must consider only the evidence and reasonable inferences most favorable to the nonmoving party." *Id.* at 793–794 (quoting *Sipes v. Osmose Wood Preserving Co.*, 546 N.E.2d 1223, 1224 (Ind.1989)).

After Turner rested his case, Countrymark requested judgment on the evidence because the defendant, Countrymark, Inc., was not the owner of the property in question at the time of the accident; rather, Countrymark argued that the property was owned by Countrymark, LLP, at all relevant times. Turner moved to amend the pleadings to conform to the evidence. The trial court took both Countrymark's motion for judgment on the evidence and Turner's motion to amend the pleadings to conform to the evidence under advisement until the completion of the case. The trial court then denied Countrymark's motion for judgment on the evidence and granted Turner's motion to amend to add Countrymark, LLP, as a named defendant.

On appeal, Countrymark argues that the trial court erred by denying its motion for judgment on the evidence. According to Countrymark, Turner named Countrymark, Inc., as a defendant but Countrymark, Inc., did not own the property in question. However, we have previously concluded that the trial court did not abuse its discretion by granting Turner's motion to amend. *See supra* Part II. As such, Countrymark, LLP, was added as a defendant, and the amendment relates back to the date of the complaint's filing pursuant to Ind. Trial Rule 15(C). The evidence presented at trial demonstrated that Countrymark, LLP, owned the property in question, not Countrymark, Inc. However, Turner argues that Countrymark invited any error, and we agree.

A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Smith v. McLeod Distributing, Inc.,* 744 N.E.2d 459, 466 (Ind.Ct.App.2000). Invited error is not subject to review by this court. *Id.* Countrymark, Inc., did not file an answer to Turner's complaint, did not assert an affirmative defense that it was not the real party in interest, and did not file a motion to dismiss under Ind. Trial Rule 12(B)(6). In the remainder of the pleadings, Countrymark variously described itself as both Countrymark, Inc., and Countrymark, LLP. Additionally, although evidence was presented at the trial that Countrymark, LLP, owned the property in question, the insurance policy provided in discovery identified Countrymark, Inc., as the policyholder. Under these circumstances, we conclude that Countrymark invited any error, and we decline to find that the trial court erred by denying Countrymark, Inc.'s motion for judgment on the evidence. *See, e.g., Smith,* 744 N.E.2d at 465 (holding that equity required that Colonial Mat be held liable for the debt at issue in order to protect an innocent third party from unfairness because Colonial Mat and Colonial Industrial d/b/a Colonial Carpets were treated as if they were adjunct corporations, or mere alter egos or instrumentalities of each other that shared a common identity).

For the foregoing reasons, we affirm the judgments against Countrymark, LLP, and Countrymark, Inc.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.